v. Rose, MNR. May it please the court, my name is Allegra Glasshauser and I represent Appellant Rose, MNR. Your honors, Ms. MNR arrived in the United States with an ordinary-looking bag of dried fish, which was a common Ghanaian product. When agents decided to search her bag, she helped them. When after 15 minutes of searching, they found heroin, she screamed, no, no, no, no. She's a 64-year-old grandmother with no suspicious phone calls or texts, no information about a drug drop, no large sum of money. No one testified that she knew there were drugs in her bag. On this record, there just wasn't enough evidence to prove beyond a reasonable doubt that she knew about the heroin. So it's a sufficiency challenge, so you have to take whatever evidence was presented in light most favorable to the government, right? That's correct, your honor. So this is a lady who's coming to the United States and her son has purchased her a ticket, and on her way to the airport, someone approaches her and asks her to take this bag. She doesn't know the individual. This is the testimony. Wait, let me finish. And her son tells her to take the bag, and then her son tells her that someone else will receive a sum of money, right? There's no testimony either that the son bought the ticket or that she'd be given a sum of money at the airport. Okay, all right. There's no sum of money at all discussed? There's no testimony. No evidence in the record about that she'd receive a sum of money? No. Okay, go ahead. So what the government is relying on are inferences, but they're not reasonable ones. Because that's not inappropriate. They can rely on an inference. Of course, but they need to be inferences that are reasonable from the evidence in the record. And here, one of their large arguments is that it's common sense that someone who has drugs that are worth a lot of money has to know about them. The problem with this common sense argument is that the government knows, and we know, that it's not true that drug organizations do, in fact, use people to deliver drugs when the person doesn't know about the drugs. So this common sense argument can't be something that the court continues to rely on. But isn't the most significant difficulty that you have in your case the fact that she made three totally inconsistent statements to law enforcement? In fact, one of them was what, okay, I'm going to tell you the truth, and then she made a statement which was, again, totally inconsistent with the two previous statements that she made. I mean, doesn't that create an inference that she was engaged in So for the inconsistent statements on the sufficiency point, I have to accept that they are true, that they are inconsistent, and that she made them. But false statements or inconsistent statements aren't enough to meet the government's burden. And what they don't show, and I think Your Honor just said it, at most they show that she knew that there was something going on that was wrong, that she may have been involved in some criminal activity. Is that your significant defense? I mean, essentially she knew that she was bringing something wrong into the country, but she didn't know it was drugs. It could have been, I don't know, diamonds. Is that what your defense is? Well, that's the closest the government gets to proving her guilt, and that's just not enough. And this court has said that it's not enough. In a whole line of cases, this court has said knowing that there is criminal activity isn't enough. You need to know what it's about. You need to know here that it's drugs. So there are cases even with people swallowing diamonds. The case of somebody, excuse me, swallowing drugs and believing they were diamonds, that was the defense. A case similarly with mobbing gold dust. And then there are drug cases where the person just, the defense is they didn't know it was drugs. Nothing the government has pointed to here indicates that Ms. Amanor, this grandmother, knew that she was taking in drugs in exceedingly well-concealed, in these dried fish. And the fact that it's well-concealed is important. It takes these agents 15 minutes of working through this bag. And now dried fish may sound unusual here in America, but it's a common Ghanaian product. It's not, and the government doesn't dispute that. It takes them 15 minutes to get in with Ms. Amanor providing assistance. So this isn't a situation where her just possession of the bag is enough. And that's what the problem with the government's argument is here, that they haven't introduced anything to show that it was drugs. And segueing into my second point, the way to fill that gap in her knowledge about drugs in particular was for the government to argue that she had to know because the drugs were worth a lot of money. That's this common sense argument that is in fact not true. And the reason it's so dangerous here is because it actually seems like it's common sense. If you're a juror or just a regular person who hasn't read up on the law or the facts that drug organizations do take advantage of people who don't know that the drugs are in their possession, it seems like common sense. So why bother considering the other evidence if you're told by the government it's common sense drug organizations don't give drugs to people who don't know. That's it. Case closed. She's guilty. But that's wrong. And it was misleading for the government to say that the government told the jury that drug traffickers are in the business of making money, not throwing it away. It told the juror what drug trafficker would give $500,000 worth of drugs to someone who didn't know and repeatedly made this argument that was not correct. And that alone is a reason to reverse, especially when the evidence aside from this nonsensical common sense argument is so weak. The one thing I didn't quite understand was there was a motion in limine filed by the defense. It was granted by the court. It was in regard to testimony or that particular order during the course of the trial. I believe there was the government's summation saying those quotes I just quoted and others in the brief talked about generic drug trafficking organizations, how drug organizations wouldn't give drugs to someone without telling them that it was they use the phrase a lottery ticket. The court prohibited the government from using any evidence about generic drug trafficking organizations never using drug traffickers. And that's just what they did. But then the court said you could talk about those same kinds of conclusions when you make it directly relevant to the facts of the case, right? Which is what the court said happened here. And why is that wrong? That's not wrong. I think the court's ruling was correct. And to the extent the government said when the drugs were in a perishable food item you might make that inference, that did not violate the ruling. But the government didn't stop there at all. The government broadened it to say that no drug organization would do this sort of thing. And that's what was wrong. They didn't object during the summation. That's true. This is a plain error situation. Because the court ruled on this issue, because the government's summation clearly violated it by saying that no drug organization would do that, and because this piece of misinformation filled exactly the gap in the government's proof, this is a situation where plain error reversal is appropriate. Thank you. You have reserved two minutes. May it please the court. Mark Beeney for the United States. The evidence was legally sufficient here. As the district court observed, the heroin-laden fish, the testimony of six witnesses who were enumerated in the district court's decision, and, quote, along with Ominor's own testimony, and this is in the appendix at 602, was more than enough for the jury to convict Ominor of importation and possession of heroin with the intent to distribute. As the court explained, the defendant gave a, quote, start-to-finish account of the happenings the jury obviously found wholly implausible. That it was at odds with her own statements to investigating agents did not help her cause. The jury's rejection of Ominor's explanation is consistent with the totality of the trial evidence, which established that Ominor arrived at JFK Airport with a bag of fish that secretly contained several kilograms of heroin. Just to focus on the main question, how did you prove that Ms. Ominor knew that the contraband was, in fact, heroin or controlled substances, as opposed to some other illegal contraband? Well, first of all, Your Honor, there was no suggestion. In this case, the defendant took the stand. And there was no suggestion at any point that there was some other criminality afoot. And the drugs, in fact, were secreted in fish, which is You make the claim they were diamonds. That's right. There was no suggestion ever that there was diamonds or uranium or some other valuable substance that she was hiding. And, in fact, there was powerful evidence in that she claimed the bag of fish that contained the heroin in which the heroin was secreted was hers, and that bag and its contents were hers. In a similar appeal of a conviction for heroin importation where airport customs officials discovered drugs in the defendant's luggage after he asserted that the luggage was his, and here I'm referring to Fort Lorma, the court said that we need not pause long over the legal sufficiency of the evidence. The defendant's possession of the heroin concealed in his baggage, coupled with his acknowledgment that the baggage was his, and that he owned the contents, and with his visible nervousness during the search, were more than legally sufficient to establish his guilt. And this case is on all fours with that one. And, in addition, guilty knowledge can be inferred from corroborating evidence, such as nervousness, a false statement, or suspicious circumstances. And there I'm referring to the United States versus Tran. What evidence were you able to adduce on examination of the defendant? Your Honor, when the defendant testified, she admitted that the statements she made to the CBP officer were false. She admitted that she told him that she was coming in to visit her son for six months, and that she said that the bag and its contents were hers. She admitted that after the heroin was found was the first time that now she said that the bag was not hers. She also admitted that her statement that she was coming to visit her son for six months was false. She said that that was something that she said in order to pass through customs. And, in fact, one of the other points of cross-examination, and something the district court pointed to in rejecting the motion for a new trial, was that, plain on the face of the ticketing she had, was that she had a three-week trip to the United States. And yet, in her second and third iterations of why she was here in the United States, she claimed she was going to babysit for a family for six months. Even though it was plain on the face of the ticketing, she wasn't going to be here for six months. And she admitted that she did not know the names or the identities of these people she claimed she was going to babysit for. Was there any evidentiary value to the existence of a bag of fish? How does a fish – is this like one of these products that puts the proverbial law enforcement dogs off the track? Or what significance was there, if any, to a bag of fish? Certainly, defendants argued that this was a Ghanaian product. The government believes that the fish was used on purpose to throw off drug-sniffing dogs. And one of the things that also came out during the case, and this is at the appendix at 171, the CBP officer who did the examination explained that Ghana is one of the focus countries, the countries they focus on for narcotics export, and that it's primarily known for heroin. And that's exactly what happened here. That becomes the link to heroin, then. So what you're suggesting is that because she's coming from Ghana, and that is known as a supplier of heroin, that that's an indication that, in fact, the contraband that she would have been bringing into the country, more likely than not, would have been heroin as opposed to diamonds. Yes, Your Honor. And the fact that it was in fish. Because, again, with diamonds, you have to beat a drug dog. And so that's another significant reason for that. Your Honor, as to the defense counsel's argument that the government's comments violated the pretrial ruling, I would just note that, in fact, as Your Honor suggested, that the government, in fact, followed the pretrial ruling here as the — and this is going to be at the special appendix at pages 14 to 15, where, responding to defense counsel's argument that testimony from an expert witness would violate federal rule of evidence 704B, the government argued, Your Honor, we think Aminor, our defense counsel, is misapplying the rule. The rule is that you cannot have an expert testify as to someone's mental state. We're having this expert testify as part of our evidence in the case. And then, certainly, when you are marshaling the evidence, the court, you're going to make the argument, Mr. Beeney, yes, Your Honor. The court, without a witness, Mr. Beeney, that's right, Your Honor. The court, so it's argument. Mr. Beeney, yes, Your Honor. Mr. Kamdang, I don't know if that gets around the fact that they're offering it for the question of knowledge. The court, no. They're offering the value of its established distribution, Mr. Kamdang, right. The court. And so the value, the value comes in. And it would then, from the value, they are then wanting to argue that for, and it may strike a response of the court with the jury, that it was so valuable that Ms. Aminor had to know what she was carrying, Mr. Kamdang. And that's what we would object to, because that goes to her mental state. So we would ask for a limiting instruction. The court. But no one is testifying. They're going to argue. You're going to say there's absolutely no evidence with respect to her mental state, right. It's argument. They're going to say, look, does it make sense to you that somebody's got a quarter million, a million dollars of heroin in her bag and doesn't know it. And, Your Honor, that's what the government did, noting that the drug expert in the case said the value of these drugs on the street would be between $360,000 and $720,000 on the street. So very valuable drugs. And, in fact, that's consistent with the Second Circuit case law looking to this, that when a member of the conspiracy is entrusted with something so valuable that that common sense dictates. So you're not talking about the general practice that in all kinds of cases, when you have a whole lot of money at stake, then you'd never entrust a courier not to know exactly what the courier's got. You're suggesting in this particular case, this is the value. And isn't it crazy to give her this kind of drugs without telling her what's involved? Yes, Your Honor. Particularly whereas here where it was in a perishable food item, where otherwise if the person did not know what they were carrying, they might discard it. Is the defendant still serving her term of supervised release? Your Honor, the defendant has completed her prison term and is in ICE custody awaiting deportation. She has no status in the country. I see. Unless Your Honors have any further questions. Thank you. Just to start, from the transcript the government just read, it didn't continue until the end where the court said this is about the ruling, about the argument. We know that it is not universally correct. He's referring to the fact that someone has a quarter of a million dollars of heroin in her bag and doesn't know it. Because it does in fact happen that someone doesn't know it. And the court made it clear that the government had to be, quote, careful not to suggest that drug couriers, drug organizations do not make this business decision without having trust in the courier. The Second Circuit's case law, Anderson, in that case a co-conspirator testifies that in that particular case the drug organization only used trusted couriers. That's absent here. This argument was misleading because it's just wrong. Drug organizations do do this. The government shouldn't have made this argument in the way that they did. Moving back to the first point about the sufficiency of the evidence, it wasn't Ms. Amanor's burden to prove that she thought the drugs weren't drugs but were something else. It's the government's burden to prove that she knew that there were drugs. The fact that she had the bags wasn't enough. And if in Forlorma, which the government says is on all fours here, the Second Circuit in that case actually reversed. They did say very briefly there was enough for sufficiency, but there was a summation misconduct issue. And that went directly to the holes in the government's case once they moved on to the second point. Saying that the bag was hers and then saying the heroin wasn't hers, that's not inconsistent. That makes a lot of sense for somebody who doesn't know about the heroin. Two other quick points. Lots of what Ms. Amanor said to those agents was corroborated in important respects. She said, Bill Thompson is picking me up at the airport. The government went, they spoke to him. She said, my son, Kofi, he brought me to the airport in Ghana. The government talked to Kofi. She said, I'm a child care provider. She'd come to the U.S. for child care before. As far as the fish, the government didn't introduce evidence that this was to hide the smell. This is dried fish. It's not some fresh, smelly fish. There was no evidence about the smell. Thank you very much, Ms. Glashauser. All the government has is inconsistent statements. Thank you very much. In an exceedingly well-hidden bag. Thank you. That is a signal, Ms. Glashauser. A signal, yeah. Please. When you are thanked, you stop. Thank you. Thank you. Thank you. You should remember next time.